# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| CHERYL ANN MCLELAND | * | CIVIL ACTION NO.  09-0219 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED** for further proceedings consistent herewith.

### Background & Procedural History

On March 6, 2006, Cheryl McLeland protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments.  (Tr. 66-68, 75, 354-359).  She alleged disability since February 15, 2005, because of hypertension urgency and congestive heart failure.  (Tr. 75, 78).  The state agency denied the claims at the initial stage of the administrative process.  (Tr. 42-47, 360).  Thereafter, McLeland requested and received a May 23, 2007, hearing before an Administrative Law Judge ("ALJ").  ( Tr. 367-390).[1] A supplemental hearing was held over one year later to permit McLeland's attorney to cross-

---

[1]  The hearing was initially scheduled for February 27, 2007, but had to be continued because McLeland had been hospitalized.  *See* Tr. 361-366.

examine a medical expert retained by the ALJ.  (Tr. 391-399 [doc. # 22]).  However, in a July 22,

2008, written decision, the ALJ determined that McLeland was not disabled under the Social

Security Act, finding at Step Four of the sequential evaluation process that she was able to return

to her past relevant work as a finance manager.  (Tr. 9-21).  McLeland appealed the adverse

decision to the Appeals Council.  Nevertheless, on December 17, 2008, the Appeals Council

denied McLeland's request for review; thus the ALJ's decision became the final decision of the

Commissioner.  (Tr. 5-7).

On February 9, 2009, McLeland sought review before this court.  She alleges the

following errors:

(1)    the ALJ's residual functional capacity assessment is not supported by substantial
evidence;

(2)    the Appeals Council erred in failing to consider new evidence submitted by
McLeland in connection with her request for review; and

(3)    the ALJ's Step Four determination is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the

ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa

v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is

supported by substantial evidence, the findings therein are conclusive and must be affirmed.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported

by substantial evidence when the decision is reached by applying improper legal standards.

*Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v.*

2

*Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## **Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

    (1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

3

(2)     An individual who does not have a "severe impairment" of the requisite
        duration will not be found disabled.

(3)      An individual whose impairment(s) meets or equals a listed impairment in
        [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without
        the consideration of vocational factors.

(4)     If an individual's residual functional capacity is such that he or she can
        still perform past relevant work, then a finding of "not disabled" will be
        made.

(5)     If an individual is unable to perform past relevant work, then other factors
        including age, education, past work experience, and residual functional
        capacity must be considered to determine whether the individual can make
        an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis;

under the fifth step, however, the Commissioner must show that the claimant is capable of

performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482

U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any

step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any

point during the five-step review the claimant is found to be disabled or not disabled, that finding

is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

I.     **Steps Two and Three**

       The ALJ determined at Step Two of the sequential evaluation process that McLeland

suffers severe impairments of arterial disease and hypertension.  (Tr. 14).  He concluded,

however, that the impairments were not severe enough to meet or medically equal any of the

impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process.

(Tr. 18).

4

## II.        Residual Functional Capacity

The ALJ determined that McLeland retained a residual functional capacity for the full range of sedentary work.  (Tr. 18).[2]  Plaintiff contends that the ALJ's residual functional capacity is not supported by substantial evidence because the ALJ improperly credited the findings of a non-examining medical expert over the findings of plaintiff's treating physician.  Plaintiff's argument is well-taken.

It is manifest that McLeland's treating cardiologist, Mahmoud Khalil, M.D., who has seen her on an ongoing basis for several years throughout the relevant period, believed that her impairments prevented her from meeting the demands of an eight hour workday on a continuing basis.  On two occasions, February 25, 2007, and April 29, 2008, Dr. Khalil completed medical source statements (apparently supplied by plaintiff's attorney) on which he indicated that McLeland suffers from fatigue on exertion, dyspnea on mild exercise, anginal discomfort, tachycardia, inability to carry on any physical activity, and marked limitation of physical activity.  (Tr. 211-212, 348-349).  Khalil further indicated that McLeland could not work during a work day; she could stand for 15 minutes at a time, sit for 30 minutes at a time, occasionally lift five pounds, lift nothing frequently, and occasionally needed to elevate her legs during an eight hour work day.  *Id*.  He noted that she had severe narrowing of the right renal artery and severe hypertension.  *Id*.

---

[2]  Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

Also during the relevant period, a consultative physician, David Hebert, M.D., examined plaintiff at the request of Disability Determination Services.  (Tr. 196-199).  During the May 22, 2006, examination, McLeland complained of sharp and severe chest pain that she experienced daily.  *Id*.  Dr. Hebert observed that all peripheral pulses were +4 bilaterally, with no peripheral edema, clubbing or cyanosis.  *Id*.  There was no evidence of peripheral arterial disease or muscle atrophy.  *Id*.  However, the eletrocardiogram showed significant sinus bradycardia.  *Id*.  Chest x-rays showed an enlarged heart, with mild cardiomegaly.  *Id*.  Hebert diagnosed arterial hypertension, poorly controlled, with *some evidence of end organ damage* due to left ventricular hypertrophy and significant cardiomegaly.  *Id*.  (emphasis added).  However, there was no evidence of congestive heart failure.  *Id*.  McLeland also experienced frequent chest pain which could represent coronary artery disease.  *Id*.  Hebert further noted that McLeland suffers from continued heavy tobacco usage and morbid obesity, with a BMI of 42.  *Id*.  Hebert opined that the nature of her chest pain needed to be evaluated.  *Id*.  He stated that it was difficult to discern whether she truly had coronary artery disease, or not.  *Id*.  He noted, however, that her degree of hypertension did not cause her to be permanently disabled.  *Id*.

Subsequent to Dr. Hebert's examination, plaintiff's heart condition resulted in several hospitalizations over a four month period.  Her hospital stays extended from June 21-30, July 10-14, August 9-14, August 17-20, and September 25-29, 2006.  (Tr. 213-261).  Plaintiff was also hospitalized from January 8-11, 2005; February 22-26, March 6, May 10-15, 2006; and from February 23-28, 2007.  (Tr. 131-133, 151-162, 190-195, 271).  Her hospitalizations largely stemmed from hypertensive urgencies which required heart catheterizations, various angioplasties, and stenting.

In lieu of the limitations recognized by plaintiff's treating cardiologist, the ALJ accorded

"great" weight to the findings of a non-examining medical expert, John C. Anigbogu, M.D.[3]  The

Fifth Circuit has held, however, that "an ALJ may properly rely on a non-examining physician's

assessment when ... those findings are based upon a careful evaluation of the medical evidence

and *do not contradict those of the examining physician*." *Carrier v. Sullivan*, 944 F.2d 243, 246

(5th Cir.1991) (quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)) (emphasis added).

Also, a non-examining physician's opinion does not provide good cause for an ALJ to discount

the findings of an examining physician.  *See, Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988)

(addressing ALJ's reliance upon non-examining physician's opinion to discount findings of

treating physician).[4]

     Here, Dr. Anigbogu's opinion unquestionably contradicts the limitations recognized by

plaintiff's treating cardiologist, Dr. Khalil, as well as the findings of the consultative physician,

Dr. Hebert.[5]  Moreover, the ALJ's decision to favor Anigbogu's findings in lieu of Khalil's

---

[3]  The ALJ solicited Dr. Anigbogu's input via interrogatories dated September 17, 2007. (Tr. 333-345).  In conjunction with his response, Anigbogu completed a medical source statement dated September 26, 2007, wherein he indicated that McLeland can occasionally lift and carry up to fifty pounds; sit up to **six** hours at a time, for up to **four** hours in an eight hour workday; and stand and walk for two-three hours at a time, for a total of two hours in an eight hour workday.  (Tr. 339-345).  Anigbogu assigned additional limitations that were not inconsistent with at least sedentary work.  *Id*.

[4]  The Fifth Circuit cited *Lamb* for the proposition that the reports of non-examining physicians do not provide substantial evidence when the non-examining physician's medical conclusions "contradict or are unsupported by findings made by an examining physician."  *Villa, supra* (citing, *Lamb, supra*; and *Strickland v. Harris*, 615 F.2d 1103, 1109-10 (5th Cir. 1980)).

[5]  Hebert found that plaintiff had evidence of end organ damage; Anigbogu found that she did not.  (Tr. 198, 338).
     Anigbogu's assessment was also internally inconsistent.  He indicated that plaintiff could sit for up to six hours at a time for a total of four hours in an eight hour day.  In his decision, the ALJ noted this inconsistency, but stated that Anigbogu clarified his responses at the supplemental hearing held in this matter.  (Tr. 17).  This clarification, however, is not readily apparent from the transcript of the hearing.  (Tr. 391-99 [doc. # 22]).

opinion also transgresses, without explanation, the maxim that the opinions of specialists are generally accorded greater weight than those of non-specialists.  *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).[6]  Accordingly, Dr. Anigbogu's assessment does not provide substantial support for the ALJ's determination.  Once Dr. Anigbogu's opinion is removed from the equation, the record otherwise remains devoid of substantial evidence to support the ALJ's residual functional capacity assessment.[7]

The undersigned notes that ordinarily, a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." 20 C.F.R. § 404.1527(d)(2).  "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'"  *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir.1995) (citation omitted).  However, an ALJ cannot reject a medical opinion without an explanation supported by good cause. *See, Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted).

The instant ALJ discounted the limitations assessed by plaintiff's treating physician because of perceived inconsistencies between the assessed limitations, the evidence in the record, and the physician's own treatment notes.  Nonetheless, the ALJ failed to employ available procedures to recontact the treating physician to satisfy his concerns in these areas.  *See*, 20

---

[6]  The ALJ referred to Dr. Anigbogu as a specialist in internal medicine.  (Tr. 19). According to the record, however, his primary specialty is sports medicine, with a secondary speciality in physical medicine and rehabilitation.  (Tr. 62).

[7]  At the hearing, the ALJ conceded that were he to credit Dr. Khalil's limitations, then McLeland would not be capable of any meaningful work activity.  (Tr. 378).  Plaintiff's self-professed limitations also did not support the ALJ's residual functional capacity assessment. *See e.g.*, Tr. 375, 383-384.

C.F.R. § 404.1512(e) (ALJ may recontact treating physicians to resolve ambiguities or conflicts in their reports). That is not to say that upon remand the ALJ ultimately must credit the limitations recognized by plaintiff's treating physician. Further development may provide valid grounds for discounting the opinion. For instance, the ALJ may employ a specialist who may examine plaintiff, review her extensive treatment records, and then provide well-reasoned assessments of the limitations imposed by her impairment(s). The record as it now stands, however, lacks such evidence.

## III.    Step Four and Remand

Because the foundation for the Commissioner's Step Four determination was premised upon a residual functional capacity which is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled, is also not supported by substantial evidence.[8]

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or

---

[8] The court need not reach plaintiff's remaining assignment(s) of error; they may be addressed upon remand, in particular, the additional evidence presented to, but not considered by, the Appeals Council; whether plaintiff can maintain work despite the frequency of her hospital admissions; and whether her past relevant work constitutes a composite job, SSR 82-61.

response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN(14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 3rd day of February 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE